IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL ASSOCIATION          *
OF THE DEAF, *et al.*,
                              *
      Plaintiffs,
                              *
v.                            *
                              *   Civil Action No. 1:14-cv-01122-RC
                              *
DISTRICT HOSPITAL PARTNERS, L.P., *
d/b/a THE GEORGE WASHINGTON
UNIVERSITY HOSPITAL,          *
                              
      Defendant.           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE
DESIGNATION AND TESTIMONY OF IRENE BOWEN**

Defendant, by and through undersigned counsel, hereby opposes Plaintiffs' Motion to Exclude Irene Bowen as an Expert Witness for Defendants. Ms. Bowen's proffered testimony is relevant to the issues to be raised at the trial of this case and will aid in understanding the complexity of the requirements at issue and how those requirements are applied by the experienced agency that promulgated them.

Plaintiffs, including three individuals and the National Association of the Deaf ("NAD"), have brought claims against the George Washington University Hospital ("the Hospital") alleging various violations of the American Disabilities Act ("ADA"), section 504 of the Rehabilitation Act of 1973 and the D.C. Human Rights Act.[1]  In particular, Plaintiffs allege that

---

[1] The ADA, Section 504 and the D.C.H.R.A. are interpreted consistently under the law. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

GWUH has failed and continues to fail to provide "effective communication" to its deaf patients because it has chosen to make use of Video Remote Interpretation ("VRI").

GWUH has designated Irene Bowen as an expert in the ADA and its requirements regarding effective communication. Ms. Bowen has over thirty years of experience in implementing the ADA and Section 504. Ms. Bowen was actively involved in the drafting of the 2010 amendments that are at issue in this action. She has unique experience in how the ADA applies to hospitals and, in particular, what the ADA requires of hospitals to provide effective communication and how it handles the use of VRI. Ms. Bowen also has vast experience in dealing with the rights of the hearing impaired and related requirements for compliance with the federal and state law. Plaintiffs have prematurely moved for this Court to strike Ms. Bowen, before she has had the chance to provide any admissible testimony, on the basis of certain statements in her preliminary report.

## LEGAL STANDARD

Federal Evidence Rule 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 113 S. Ct. 2786 (1993), govern the admissibility of expert testimony. The *Daubert* standard applies to all expert testimony, whether based on scientific competence or other specialized or technical expertise. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000) (*citing Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1)the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

>principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000); *see Smith*, 215 F.3d at 718 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.") (*citing Kumho*, 526 U.S. at 156)). The district court's role is to consider whether the proposed testimony will assist the trier of fact or the court in its analysis of any issue relevant to the dispute. *See Smith*, 215 F.3d at 718; *Daubert*, 509 U.S. at 592. It is crucial that the expert "testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quoting *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998)).

Expert witnesses like Ms. Bowen, with special experience in regulatory matters at issue here, "are uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts. Because of [her] specialized knowledge, [her] testimony can be extremely valuable and probative." *United States v. Duncan*, 42 F.3d 97, 100 (2nd Cir. 1994) (allowing testimony that included legal conclusions, stating "the allegedly impermissible testimony was expressed within a larger body of otherwise unobjectionable testimony concerning the functioning of the tax system from which the [fact-finder] could have easily drawn the same conclusions that the witness did") (internal quotations omitted); *see also, United States v. Mahney*, 949 F.2d 1397, 1406-07 (6th Cir. 1991) (IRS agent's expert testimony was critical as it created framework for the jury to properly understand the testimony of other witnesses).

The Courts have also noted that, when the legal regime at issue is complex and the judge determines that the witness's testimony would be helpful in explaining it, the testimony may be

admitted. *United States v. Offill*, 666 F.3d 168, 174 (4th Cir. 2011) (allowing admission of expert testimony that arguably stated a legal conclusion due to complex regulatory regime); *accord*, *United States v. Barile,* 286 F.3d 749, 760 n.7 (4th Cir. 2002). Indeed, *Offill* and *Duncan*, both cited by Plaintiffs, allowed the expert to testify despite arguments that the testimony included legal conclusions. In *Offill*, the Court allowed the expert testimony concluding "that the specialized nature of the legal regimes involved" and "the complex concepts involving securities registration, registration exemptions, and specific regulatory practices make it a typical case for allowing expert testimony that arguably states a legal conclusion in order to assist the jury." *Offill*, 666 F.3d at 174. The Court allowed the experts to give testimony concerning the general operation of securities law, even though the areas of testimony were directly relevant to the conduct with which Offill was charged, thus allowing the jury to determine the law's applicability of the stature. *Id.*; *see also United States v. Bilzerian*, 926 F.2d 1285, 1294-95 (2d Cir. 1990) (expert testimony properly admissible where "testimony was general background on federal securities regulation and the filing requirements of Schedule 13D"). Similarly in *Duncan*, the Court found the admission of expert testimony that included legal conclusions permissible, stating "the allegedly impermissible testimony was expressed within a larger body of otherwise unobjectionable testimony concerning the functioning of the tax system from which the [fact-finder] could have easily drawn the same conclusions that the witness did." *Duncan*, 42 F.3d at 100.

Indeed, courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be admitted in cases that involve highly technical legal issues. *See, e.g., United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) ("Particularly in complex cases involving the securities

industry, expert testimony may help a jury understand unfamiliar terms and concepts"); *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (expert testimony on proximate causation in insurance law was properly admitted because experts "could reasonably be expected to shed some light in a shadowy domain"); Weinstein's Federal Evidence § 704.04[2][a] (2d ed. 2003) ("[Expert] testimony may be helpful if the case involves a specialized industry").

The rejection of expert testimony is the "exception, rather than the rule," and the Court should not use its gatekeeper role as a replacement for the adversary system in assessing the value of competent expert testimony on material issues before the court. *Alberts v. HCA Inc.*, 2007 Bankr. LEXIS 1, *3 (U.S. Bankr. D.C., January 2, 2007).

## ARGUMENT

### 1. Ms. Bowen's Testimony Is Admissible and Will Be Helpful in Understanding the Regulatory Framework from Which This Case Arises.

Plaintiffs' argument that Ms. Bowen's opinion consists solely of inadmissible legal conclusions ignores many of the areas of useful testimony that she will be able to provide. Ms. Bowen conducted a thorough investigation of GWUH's policies regarding communication with its deaf patients and how those policies are implemented in the day to day operations of the hospital. As her report demonstrates, she evaluated the policies using 8 separate regulatory requirements, and found the policy to have 10 different features that aimed at meeting those requirements.

Indeed, there are several areas of her proposed testimony which cannot be categorized as legal conclusions, including:

- The history of the applicable regulations from 1990 to 2010 when the amendments at issue here were adopted (*see e.g.* page 5 of Irene Bowen Report, Ex. 1);

- The regulatory process and background on how the applicable regulations were formulated and what they were meant to do, including a discussion of how the regulations concerning VRI were drafted, adopted, commentary received on them and the choices made as a result of that commentary (*id.* at 5, 15);

- How the 2010 changes to the ADA have been enforced with regard to public accommodations such as GWUH (*id. passum*);

- The history of communication technology for the deaf and hard of hearing particularly the more recent influx of methods such as VRI (*id.* at 5);

- How VRI meets the requirement of "effective communication" based upon her experience, particularly with the *Gillespie* case (*id.* at 5); and,

- An explanation why the Department of Justice differentiated between public hospitals and private ones on how accommodations are to be provided. (*id.* at 15).

Additionally, because Ms. Bowen did a detailed investigation of GWUH's disability policies, she will be able to testify regarding the ten features of GWUH's policies and how they make the overall policy consistent with the requirements of the ADA.  Further, given her background in *Gillespie and U.S. v. Dimensions Health Corporation* (the first case against a hospital concerning the use of VRI), she has the ability to look at the use of VRI by a hospital and explain how it would meet the regulations as implemented by the DOJ.  Accordingly, the Court at this preliminary juncture should not strike her from testifying entirely, as she will provide useful <u>factual</u> information for evaluating this matter and the questions raised by Plaintiffs.

### 2. Expert Testimony That May Otherwise Be Inadmissible Is Often Admitted When There Is a Complex Regulatory Framework.

Even if some of Ms. Bowen's testimony crosses the line into to legal opinion, it is not offered to usurp the role of the judge in this action, but rather to provide the Court with an understanding from an expert working the field of what the applicable regulations require and how that understanding applies to the facts in this case.[2] Such testimony is admissible "because of the complex nature of the process and procedures." *See In re: Yasmin and Yaz Mktg. Sales Prac. and Prods. Liab. Litig.,* Case No. 3:09-md-02100, 2011 U.S. Dist. LEXIS 145593, at *37 (N.D. Ill. Dec. 16, 2011), *citing In re Fosamax Prods. Liab. Litig.,* 645 F. Supp. 2d 164, (S.D. N.Y. 2009) ("A lay jury cannot be expected to understand the complex regulatory framework that informs the standard of care in the pharmaceutical industry. ... An expert may offer testimony embracing an ultimate issue of fact that the jury will decide. Cross examination and competing expert testimony ... will ensure that the jury carefully weighs her testimony.") Furthermore, "testimony concerning regulatory compliance should be facilitated rather than barred where regulatory compliance is at the heart of the case and the plaintiffs are not independently qualified to discuss the regulatory framework." *Darling v. Indyman Bank*, Civ. No. 06-123-B-W, 2007 U.S. Dist. LEXIS 88931, *10 (D. Maine, December 3, 2007).

Expert testimony in cases involving regulatory schemes is necessary to ensure an understanding of the governing regulations that will be relied upon in determining liability. As

---

[2] Defendants are unsure how the trial in this matter will proceed. Defendant agrees that issues related to the requested injunctive relief would be properly by the Judge rather than the jury. However, there is no indications to whether the trial will be bifurcated, separating out the jury versus judge questions, or whether the jury will be privy to all the proffered testimony and evidence and only presented with limited questions on a verdict sheet. Furthermore, some of Ms. Bowen's testimony, for example the factual background of the regulation, its history and the recognition of VRI as an effective means of communication in some instances by the DOJ, may be admissible and relevant to the individual plaintiff's claims on the issue of any alleged discrimination by the hospital was intentional.

the court in *Lyondell Petrochemical Co. v. Flour Daniel, Inc.*, 888 S.W. 2d 547, 555 (Tex. App. 1994), stated:

> Clear regulatory language, cast in ordinary and familiar words, is not enough. Without express standards in a regulation for guidance, a jury lacks a critical stepping stone toward forming an opinion regarding whether the abstract mandate of the regulation has as a factual matter been met, and is not equally as able to form such an opinion as a person familiar, through prior experience, with what, factually, constitutes compliance with the regulation. In such an instance, the specialized experience and knowledge of others, via their testimony as expert witnesses, is called for, to assist the jury to measure compliance with the regulation -- and, when offered in such an instance, such testimony should be admitted.

For testimony about noncompliance to have meaning there is a need to convey to the fact finder that there exists a regulatory framework that mandates compliance. The most appropriate way to handle a situation like this one is not to preclude the testimony altogether, but to provide the jury with preliminary instructions concerning the regulatory framework and require the expert to couch his compliance testimony in terms of the Court's instructions on the law, rather than in terms of his private characterizations of the law. *Darling*, 2007 U.S. Dist. LEXIS 88931, at *15, *accord*, *United States v. Caputo*, 382 F. Supp. 2d 1045, 1053 (N.D. Ill. 2005) (taking this approach in a criminal case involving FDA regulatory "enforcement policies"). Even the NAD, through its corporate representative and President, Howard Rosenblum, has testified that the regulations governing what is effective communication are not clear and the DOJ has not provided concrete guidance. For example, Mr. Rosenblum testified to the following:

> the Department of Justice, I have to say, is a strange animal. They do not clarify their rules on any frequent basis. Now, they do have specifications for VRI, but they also emphasize need for what we would all like, which is effective communication.

Dep. of NAD through Howard Rosenblum, April 8, 2015, Rough Draft, 32:13-18, (attached as Exhibit 2).

> The Department of Justice has a simple list of all available auxiliary [sic] aids and communicates with people that they need to figure out what is most effective. And so the problem is that most places do not know what is most effective, including many hospitals, and so they simply pick one off the list and say that it is effective and say that it was in the Department of Justice's list. But just because it's on that list does not mean that it's effective. And that has been problematic.
>
> So the fact that VRI is on the list as an auxiliary [sic] aid, that's not the problem. The problem is that there is no clear definition of when it is appropriate to use which auxiliary [sic] aid.

*Id.* at 34:22 – 35:13.

> Q. I just want to make sure that I made my question clear. So since you've been there, has NAD had any communications with the Department of Justice in an effort to get the VRI regulation revised?
>
> A. Okay. So here's the challenge. The Department of Justice very rarely changes their regulations. They have to go through the NPR process, notice of proposed rulemaking, which takes years. So we have had several meetings with the Department of Justice, and more scheduled to come, where we are trying to get them to at least write a clarification in their guidelines which do not actually require that notice of proposed rulemaking.
>
> Again, it goes back to a problem with the regulations themselves. The regulations simply list what can be used and does not explain how those auxiliary [sic] aids can be used. And the Department of Justice seems to not want to set those requirements because in many situations it's dependent on the individual and the individual situation.
>
> The problem is, though, that now all of the hospitals are saying that VRI is the one and only answer because it is on that auxiliary [sic] list, and so they're all saying they can use that and only that. And they are completely neglecting to look at what effective communication means.

> Q. What clarification in the guidelines are you seeking, or the regulations?
>
> A. The Department of Justice has a guideline on effective communication within hospitals, but it has not been updated since VRI has been added to that list.

*Id.* at 35:21 – 37:2.

> THE WITNESS: As I said earlier, the regs only say what hospitals can use. It doesn't say how it should be used. We would like clarification about many deaf people who use sign language, what they need for effective communication.

*Id.* at 38:8-13. The testimony of Ms. Bowen, who has unique experience within the DOJ implementing these very regulations, will be invaluable to aid in clarifying the morass described by Mr. Rosenblum.

Testimony from an industry expert such as Ms. Bowen is often admissible, and has been admitted in many ADA actions. For example, testimony from Peter Blanck, a lawyer and professor at Syracuse University who is an expert on the ADA and related laws, recently was accepted in *Brooklyn Center for Independence of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588 (S.D.N.Y. 2013). Mr. Blanck's testimony was permitted and cited by the Court in its Opinion and Order finding that the City of New York had violated the ADA by failing to provide people with disabilities meaningful access to its emergency preparedness program. See *Id.*; see also http://aseanidpp.org/blanck.

Furthermore, if the Court finds that any of Ms. Bowen's proffered testimony goes beyond factual observations that the Court decides to admit, her testimony can be easily limited at trial to conform to an appropriate scope. Moreover, since this testimony mostly addresses issues that are for the Court rather than a jury to decide, the Court will be better equipped to hear the testimony and determine what of it to consider and what to disregard.

### 3. Plaintiffs Motion is Premature.

At the very least, the Court should not strike Ms. Bowen's testimony without first hearing it. *See Alberts*, at *6-7 (stating that in bench trials, the court should not exclude expert testimony without first hearing it); *see also Daubert*, 509 U.S. at 596 (stating that "vigorous cross-examination [and] presentation of contrary evidence" are the best ways to address questions regarding expert testimony); *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1176 (1999) (noting that the trial judge has the discretion "to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises"). Ms. Bowen has not yet testified, and all that has been provided in her Rule 26 disclosure and report.

Where, as here, the judge will serve as both gatekeeper and finder of fact for some of the issues raised, "the court's gate keeping role is necessarily different and there is a diminished need for the court to make reliability determinations before hearing the proffered testimony." *Alberts v. HCA Inc. (In re: Greater Southeast Cmty. Hosp. Corp.)*, Case No. 02-02250, 2007 Bankr. LEXIS 1, *7 (U.S. Bkrtcy. D.C. January 2, 2007) (Internal quotations omitted.) Further, there is no rule that expert testimony is never needed when the ultimate issue is to be decided by a judge rather than a jury. Judges, just like lay people, are not experts in every area of law, particularly in those that are heavily regulated. Accordingly, the Court should not grant any motion striking the testimony of Ms. Bowen at this juncture, particularly since here the Court will retain the ability to later exclude it or disregard it if it turns out not to meet the standards of reliability as established by Rule 702.

Wherefore, Defendant respectfully requests that the Court deny Plaintiffs Motion to Strike the testimony of Expert Irene Bowen.

Respectfully submitted,

**BONNER KIERNAN TREBACH & CROCIATA, LLP**

*/s/ Megan Kinsey-Smith*

---

Christopher E. Hassell, Fed. Bar No. 291641
Megan Kinsey-Smith, Fed. Bar No. 498125
1233 20th Street, NW. Suite 800
Washington, DC 20036
(202) 712-7000 (phone)
(202) 712-7167 (fax)
chassell@bonnerkiernan.com
mkinseysmith@bonnerkiernan.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing *Opposition to Plaintiff's Motion to Strike the Testimony of Irene Bowen* was filed by the Court's CMECF system and thus was served upon the following:

Joseph B. Espo, Esquire
BROWN, GOLDSTEIN, & LEVY, LLP
120 E. Baltimore Street, Suite 1700
Baltimore, Maryland 21202

Debra Patkin, Esquire
Caroline Jackson, Esquire
National Association for the Deaf
Law and Advocacy Center
8630 Fenton Street, Suite 820
Silver Spring, Maryland 20910
*Attorneys for Plaintiffs*

*/s/ Megan Kinsey-Smith*

---

Megan Kinsey-Smith