```
                          040815 Rosenblum
22    or maybe a certain setting where there are
23    various people coming in to -- medical staff
24    coming in to see the patient very briefly.
                                                    32

                   ROUGH DRAFT - H. ROSENBLUM

1              I believe that we do have a situation
2     where GWU has really gone from one extreme to the
3     other.  So GWU used to provide on-site
4     interpreters, and people in the past very much
5     aspired to be like GWU, and now they've gone to
6     the other extreme where they've switched to VRI
7     entirely and there is no middle ground.
8              We are a bit confused by their policy
9     and their behavior.
10        Q.   Has the NAD communicated with the
11    Department of Justice about its positions on VRI?
12        A.   We have had many conversations with
13    the Department of Justice.  And the Department of
14    Justice, I have to say, is a strange animal.
15    They do not clarify their rules on any frequent
16    basis.  Now, they do have specifications for VRI,
17    but they also emphasize need for what we would
18    all like, which is effective communication.
19             So we at NAD do not believe that VRI
20    provides effective communication for serious
21    situations, especially when the patient is in
22    pain or is under stress or is considering various
23    medical options.
24        Q.   So the Department of Justice issued
                                                    33

                   ROUGH DRAFT - H. ROSENBLUM
                         Page 27
```


DEFENDANT'S EXHIBIT 2

040815 Rosenblum

```
 1   some regulations in 2011 that included VRI as an
 2   auxiliary aid, correct?
 3       A.   Yes, correct.
 4       Q.   Before those regulations became final,
 5   during the comment period did NAD submit any
 6   comments on the proposed regulations?
 7       A.   Again, that was before my tenure at
 8   NAD, so I honestly do not know the answer to that
 9   and would need to check the record.
10       Q.   Before those regulations became final,
11   which I believe was March of 2011 -- anyway, in
12   2011 -- did NAD provide any kind of testimony to
13   any government organization on VRI?
14       A.   Again, personally, I do not know the
15   answer to that.  I believe that we did.  We had
16   many attorneys at that time who have testified on
17   many different policy issues, and whether we
18   covered that topic or not, I would have to check
19   the record.
20       Q.   The attorneys who have testified on
21   behalf of NAD on policy issues, what entities do
22   they normally testify before?
23       A.   We don't always testify per se, but we
24   do always submit information.  But we have
```
                                                      34

ROUGH DRAFT - H. ROSENBLUM

```
 1   testified before Congressional hearings.  We have
 2   testified in front of the FCC.  Also the
 3   Department of Justice.  And I would say in most
 4   situations we have meetings as well as written
 5   submissions.
```

040815 Rosenblum

```
 6        Q.    So let me ask you questions --
 7              MR. ESPO:  I'm sorry.  I think there
 8     might have been --
 9              THE INTERPRETER:  FCC.
10              MR. ESPO:  I thought I heard SEC.  I
11     may have just heard it wrong.
12              THE WITNESS:  Need a hearing aid?
13     BY MR. HASSELL:
14        Q.    Let me ask sort of the same questions.
15     Since the regulations became final in 2011, has
16     NAD taken any action to try to revise the
17     regulations on VRI?
18        A.    Again, I do not know what NAD did at
19     that time and I would have to check the records.
20     But my understanding of how the Department of
21     Justice views auxiliary aids we believe to be
22     problematic.  The Department of Justice has a
23     simple list of all available auxiliary aids and
24     communicates with people that they need to figure
```
                                                         35

ROUGH DRAFT - H. ROSENBLUM

```
 1     out what is most effective.  And so the problem
 2     is that most places do not know what is most
 3     effective, including many hospitals, and so they
 4     simply pick one off the list and says that it is
 5     effective and say that it was in the Department
 6     of Justice's list.  But just because it's on that
 7     list does not mean that it's effective.  And that
 8     has been problematic.
 9              So the fact that VRI is on the list as
10     an auxiliary aid, that's not the problem.  The
```
                         Page 29

040815 Rosenblum

11  problem is that there is no clear definition of
12  when it is appropriate to use which auxillary
13  aid.
14      Q.  A couple of times in your answer you
15  used the term "most effective."  I'm not sure I
16  know what you meant by that.
17      A.  I meant effective.
18      Q.  So you've been at NAD since 2011,
19  right?
20      A.  Yes.  April 1st, 2011.
21      Q.  I just want to make sure that I made
22  my question clear.  So since you've been there,
23  has NAD had any communications with the
24  Department of Justice in an effort to get the VRI

36

ROUGH DRAFT - H. ROSENBLUM

1   regulation revised?
2       A.  Okay.  So here's the challenge.  The
3   Department of Justice very rarely changes their
4   regs, their regulations.  They have to go through
5   the NPR process, notice of proposed rulemaking,
6   which takes years.  So we have had several
7   meetings with the Department of Justice, and more
8   scheduled to come, where we are trying to get
9   them to at least write a clarification in their
10  guidelines which do not actually require that
11  notice of proposed rulemaking.
12          Again, it goes back to a problem with
13  the regulations themselves.  The regulations
14  simply list what can be used and does not explain
15  how those auxillary aids can be used.  And the

Page 30

040815 Rosenblum

16   Department of Justice seems to not want to set
17   those requirements because in many situations
18   it's dependent on the individual and the
19   individual situation.
20            The problem is, though, that now all
21   of the hospitals are saying that VRI is the one
22   and only answer because it is on that auxillary
23   list, and so they're all saying they can use that
24   and only that.  And they are completely

37

ROUGH DRAFT - H. ROSENBLUM

1    neglecting to look at what effective
2    communication means.
3        Q.   What clarification in the guidelines
4    are you seeking, or the regulations?
5        A.   The Department of Justice has a
6    guideline on effective communication within
7    hospitals, but it has not been updated since VRI
8    has been added to that list.
9        Q.   Okay.  I understand your answer.  I
10   was trying to ask for the substance.  What would
11   you like to see it say?
12       A.   We want it to say what we said in the
13   complaint.
14       Q.   I just heard that answer, I guess.
15   But I think -- and I don't really want to have a
16   policy debate with you, but I'm trying to
17   understand --
18            MR. ESPO:  That's good.
19            THE WITNESS:  Why not?
20   BY MR. HASSELL:

Page 31

040815 Rosenblum

21  Q.   Well, I think it's pretty clear under
22  the regulations that the patient doesn't get to
23  choose.  So that's what I'm trying to understand,
24  is what clarification you're seeking.  Changing

38

ROUGH DRAFT - H. ROSENBLUM

1       it is different, but now you're saying you want a
2       clarification.  Can you explain that to me?
3              MR. ESPO:  I will let him answer, but
4           I will object on the basis that discussions
5           about what the regulations mean -- Well,
6           Mr. Rosenblum can certainly answer your
7           question.
8              THE WITNESS:  As I said earlier, the
9           regs only say what hospitals can use.  It
10          doesn't say how it should be used.  We would
11          like clarification about many deaf people
12          who use sign language, what they need for
13          effective communication.
14             In the old guidelines there were
15          problems where the hospitals just didn't
16          provide interpreters at all.  So the DOJ
17          clarified and said interpreters should
18          always be provided if that's how the deaf
19          person communicates, is with sign language.
20             So we think it's also appropriate to
21          clarify to say when the patient is in the
22          hospital situation and in pain or discussing
23          medical options or whatever, that we want
24          them to clarify and say that that person

39