# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| NATIONAL ASSOCIATION OF THE DEAF, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 14-1122 (RC) |
| | : | | |
| v. | : | Re Document No.: | 13 |
| | : | | |
| DISTRICT HOSPITAL PARTNERS, L.P., d/b/a THE GEORGE WASHINGTON UNIVERSITY HOSPITAL | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S EXPERT DESIGNATION OF IRENE BOWEN AND TO PRECLUDE HER TESTIMONY

## I. INTRODUCTION

Three individual plaintiffs who are deaf, along with the National Association of the Deaf ("NAD"), on behalf of its members, have initiated this action against George Washington University Hospital ("GWUH"). Plaintiffs claim that the hospital's use of video remote interpreting ("VRI") services as a method of providing American Sign Language interpretation fails to ensure that patients or their companions are afforded the "effective communication" Title III of the Americans with Disabilities Act ("ADA") and its implementing regulations requires.[1] Plaintiffs have moved to strike the expert designation and testimony of GWUH expert witness Irene Bowen, a consultant, attorney, and former Department of Justice official, whose expert report assesses GWUH's policies respecting communications with individuals who are deaf and

---

[1] Plaintiffs also assert claims under Section 504 of the Rehabilitation Act and the D.C. Human Rights Act. *See* Compl. ¶ 3, ECF No. 1.

concludes that those policies are "consistent with the [T]itle III regulation." *See* Pls.' Mot. Ex. 2 at 15 ("Bowen Report"), ECF No. 13-3. Because Ms. Bowen's proffered testimony inappropriately opines on whether the legal standard relevant to this case has been met, *see Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1212–13 (D.C. Cir. 1997), the Court will grant Plaintiffs' motion.

## II. FACTUAL BACKGROUND

Title III of the ADA prohibits public accommodations, like hospitals, from discriminating against individuals "on the basis of disability in the full and equal enjoyment of . . . goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(a). Such discrimination includes an accommodation's failure to take the steps necessary to ensure that an individual is not "excluded, denied services, segregated or otherwise treated differently . . . because of the absence of auxiliary aids and services."[2] *Id.* § 12182(b)(2)(A)(iii); *see also* 28 C.F.R. § 36.303. Public accommodations therefore must "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities," although "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with" several considerations, including: "the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 C.F.R. §§ 36.303(c)(1), (c)(1)(ii). Auxiliary aids may include qualified interpreters provided by "video remote interpreting (VRI) services"—in which an interpreter communicates with an individual remotely, akin to

---

[2] The statute contains an exception, not raised here, where those services would "fundamentally alter" the accommodation or would result in "an undue burden." 42 U.S.C. § 12182 (b)(2)(A)(iii).

videoconferencing technology—so long as those services provide effective communication under the circumstances. *Id.* § 36.303(b)(1).

Plaintiff NAD and individual plaintiffs Robbie Carmichael, Carrie St. Cyr, and Allison McGuigan have initiated this action claiming that GWUH has failed to provide the auxiliary aids and services necessary to ensure effective communication with Plaintiffs and other individuals who are deaf.  *See* Compl. ¶ 3, ECF No. 1.  Specifically, Plaintiffs claim that GWUH's use of VRI services, in lieu of in-person interpreters, denied the individual plaintiffs effective communication and therefore violated Title III of the ADA, Section 504 of the Rehabilitation Act, and the D.C. Human Rights Act.  *See id.* ¶¶ 168, 177, 185, 193.  Plaintiffs also seek injunctive relief to require GWUH to use on-site interpreters, at least in some circumstances.  *See id.* at 25–26.

Plaintiff Carrie St. Cyr, for example, alleges that during sixteen hours of labor at GWUH she had difficulty communicating with the VRI interpreter GWUH provided, was unable to remain in a consistent position to view the video screen, that the video quality was poor and choppy, that the connection was lost on several occasions, requiring additional time to reconnect, that some of the staff was unfamiliar with how to use the machine, and that the remote interpreter made various mistakes in communicating information to Ms. Cyr.  *See* Am. Compl. ¶¶ 1, 89, 91–92, 95.  Plaintiffs Robbie Carmichael and Allison McGuigan allege that they faced similar difficulties at GWUH when they were treated during surgery or in the emergency room.  *See id.* ¶¶ 48–77, 120–156.  In some cases, the individual plaintiffs claim that they were impelled to provide their own interpreters or that family members were forced to relay information to them in order to effectively communicate with hospital staff.  *See id.* ¶¶ 49, 89.

GWUH has designated Irene Bowen as an "expert in the ADA and its requirements regarding effective communication." Def.'s Mem. Opp'n to Pls.' Mot. to Strike at 2 ("Def.'s Mem. Opp'n"), ECF No. 18. Ms. Bowen is the founder and President of ADA One, LLC, a consulting firm that advises "state, local, federal, and private entities about compliance with the ADA and related laws." Bowen Report at 2. Ms. Bowen is an attorney, and spent twenty-six years at the Department of Justice. *See* Pls.' Mot. Ex. 1. Most pertinent to this case, she served as the Deputy Chief of the Disability Rights Section in the Department of Justice's Civil Rights Division from 1992 until 2008.[3] *See id.* During that time, she was involved in crafting the proposed ADA regulations issued in 2008, which were implemented in final form in 2010. *See* Bowen Report at 2. She also explains that she supervised the first enforcement litigation brought by the Department of Justice against a hospital regarding its use of VRI, and states that the 2010 regulatory requirements specific to VRI were based on that litigation. *See id.*

Ms. Bowen's expert report states that she was asked to review GWUH's policies and practices regarding communication with individuals who are deaf or hard of hearing, with emphasis on the use of VRI services. She was asked "to evaluate whether these [policies] were compliant with the applicable statutory and regulatory requirements" under Title III of the ADA and Section 504. *Id.* at 1–2. She acknowledges that "the determination of whether effective communication is provided is made on a case-by-case basis," but notes that her "focus . . . was on GWUH's policy," generally. *Id.* at 6. In a background section of the report, Ms. Bowen briefly discusses her "understanding of all the federal requirements of effective communication,

---

[3] There is some discrepancy on this point. Ms. Bowen's report states that she served as Deputy Chief beginning in 1990. *See* Bowen Report at 2. Her resume, by contrast, states that she only became Deputy Chief in 1992. *See* Pls.' Mot. Ex. 1.

and the way in which DOJ has come to apply them to VRI in particular in the last several years."
*Id.* at 4–6.

Ms. Bowen also sets out her understanding of the policy's features, based on her interview with Keisha Mulling-Smith, GWUH's Director of Patient Experience, her review of various internal policies, e-mail correspondence, training materials, and other documents, and her observations of a demonstration of GWHU's process for linking to a VRI service provider. *Id.* at 3–4, 7–11.  Ms. Bowen detailed "ten features" that she believes describe the policy, quoting, where relevant, from GWUH documents.  *See id.* at 7–11.  She explains that, under the current GWUH policy, VRI is the primary method for sign language interpretation at the hospital, although in-person interpreting services may be provided in certain situations.  *See id.* at 9.

After describing the policy, Ms. Bowen's report presents her assessment and opinion. She explains that she "reviewed the GWUH policy against eight regulatory requirements," *id.* at 6, which, as explained below, are all lifted directly from the relevant regulation, *see* 28 C.F.R. § 36.303(c)(1)(ii), (f).  Ultimately, Ms. Bowen concludes that, "[a]pplying the eight regulatory requirements . . . , it is my view that the Hospital's policy as a whole complies with the ADA when applied appropriately on a case-by-case basis."  Bowen Report at 11; *see also id.* at 15 ("The GWUH policy about interpreters and their provision either through on-site services or through VRI is consistent with the title III regulation.")

## III.  ANALYSIS

Plaintiffs have moved to strike Ms. Bowen's expert designation and exclude her proffered testimony, arguing that it supplies an inadmissible legal conclusion.  The Court agrees and will grant the motion.

The Federal Rules of Evidence provide, in relevant part, that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This Circuit applies a "two-part test for determining the admissibility of expert testimony." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1211 (D.C. Cir. 1997). First, a court should ask whether the witness is qualified. *Id.* If the witness is qualified, the court then asks whether the expert's testimony would be "capable of assisting the trier of fact." *Id.* Plaintiffs do not challenge Ms. Bowen's qualifications, so the Court focuses exclusively on whether her testimony would be capable of assisting the trier of fact.

"Expert testimony that consists of legal conclusions cannot properly assist the trier of fact" in either "'understand[ing] the evidence or . . . determin[ing] a fact in issue.'" *Id.* at 1212; *see also U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C. 2002) ("[E]xpert testimony consisting of legal conclusions will not be permitted because such testimony merely states what result should be reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the responsibilities of the court."). Thus, while "an expert may offer his opinion as to *facts* that, if found, would support a conclusion that the legal standard at issue was satisfied," he "may not testify as to whether the legal standard has been satisfied." *Burkhart*, 112 F.3d at 1212–13 (emphasis added). This limitation, the Circuit has explained, is consistent with the Federal Rules' committee notes, which explain that an expert may not offer "'opinions which would merely tell the jury what result to reach,' or which are 'phrased in terms of inadequately explored legal criteria.'" *Id.* at 1212 (quoting Fed. R. Evid. 704 advisory committee's note). "[T]he line between an inadmissible legal conclusion and admissible assistance to the trier of fact

in understanding the evidence or in determining a fact in issue is not always bright." *Id.* An expert's testimony is likely to constitute a legal conclusion where "it track[s] the language of the applicable statute" and uses terms that "ha[ve] a specialized legal meaning that [are] more precise than the lay understanding of the term." *Id.* In *Burkhart*, itself, the D.C. Circuit held that the district court abused its discretion by permitting an expert witness to testify that the Washington Metropolitan Area Transit Authority and a transit police officer had violated the ADA by failing to provide the plaintiff—who was deaf—with communication that was "as effective" as the communication provided to other individuals. *Id.* at 1213.

Precisely as in *Burkhart*, Ms. Bowen's proffered testimony here inappropriately opines on "whether the legal standard has been satisfied."[4] *Id.* at 1212–13. Ms. Bowen's report specifically indicates that she was asked to provide such an opinion, explaining that she was asked "to review the policies and practices of GWUH with respect to communication for individuals who are deaf or hard of hearing, especially the use of video remote interpreting (VRI), and to evaluate *whether these were compliant with the applicable statutory and regulatory requirements* under Title III of the Americans with Disabilities Act (ADA) . . . and section 504 of the Rehabilitation Act of 1973 . . . ." Bowen Report at 1–2 (emphasis added). Her ultimate conclusion, too, is a patently legal one. She states: "[a]pplying the eight regulatory requirements set out [in her report], it is my view that the Hospital's policy as a whole complies with the ADA when applied appropriately on a case-by-case basis." *Id.* at 11.

---

[4] In fact, the regulation at issue in *Burkhart* was an earlier version of the provision requiring public entities to afford "effective communication" to individuals who are deaf, which was amended in 2010. *See* 28 C.F.R. § 35.160 (1991 ed.); *see also* 28 C.F.R. § 35.160 (in force, as amended in 2010 and effective 2011). In many ways, that regulation parallels the provision specific to public accommodations that is at issue in this case, although it does differ in some respects. *Compare* 28 C.F.R. § 35.160, *with* 28 C.F.R. § 36.303.

And to arrive at that conclusion she compared GWUH's policy to eight "regulatory requirements"—each of which is lifted directly from the governing regulation.  For example, she considers whether the policy provides for "case-by-case decisions" that take into account "the nature, complexity, or context of the communication."  *See id.* at 12.  The implementing regulation states that: "[t]he type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place."  28 C.F.R. § 36.303(c)(1)(ii).  Similarly, her opinions on whether GWUH's policy appropriately requires the hospital to "consult" with patients "to determine what accommodations a patient will require," or provides "timely and private communication" and "[q]ualified interpreters," *see* Bowen Report at 13–14, each directly track the regulation's language, *see* 28 C.F.R. § 36.303(c)(1)(ii) ("A public accommodation should consult with individuals with disabilities whenever possible to determine what type of auxiliary aid is needed to ensure effective communication . . . ."); *id.* ("In order to be effective, auxiliary aids and services must be provided . . . in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability."); *id.* at § 36.303(b)(1) (providing that "auxiliary aids and services" may include "[q]ualified interpreters on-site or through video remote interpreting (VRI) services").

Subsection (f) of the regulation also sets forth additional requirements specific to VRI services.  *See id.* § 36.303(f).  If a public accommodation "chooses to provide qualified interpreters via VRI services" the public accommodation "shall ensure that it provides": full-motion audio and high-quality video over a high-speed, wide-bandwidth connection that "do[es] not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication";

"sharply delineated image[s]" showing the interpreter and the participating individual's "face, arms, hands, and fingers"; a "clear, audible transmission of voices"; and "[a]dequate training" to individuals involved in providing the VRI services "so that they may quickly and efficiently set up and operate the VRI." *Id.* Ms. Bowen's report similarly considers these requirements, based on a demonstration of GWUH's VRI technology that she observed "not in a medical care setting but rather in a conference room." Bowen Report at 13. And, again parroting portions of the regulatory language, her report concludes that GWUH's technology is "geared to these requirements." *Id.*

Finally, Ms. Bowen asks whether, overall, the policy ensures "effective communication." *See id.* at 12; *compare* 28 C.F.R. § 36.303(c)(1) (stating that a public accommodation must provide "appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities"); *cf. Burkhart*, 112 F.3d at 1213 ("The phrase 'as effective' is lifted directly from the text of the Attorney General's regulations implementing the ADA."). As in *Burkhart*, this assessment is necessarily "a term of art with a meaning 'separate' and 'distinct' from the vernacular." 112 F.3d at 1213. To determine whether specific auxiliary aids or services afford "effective communication" in any particular setting requires a contextual determination based on each of the factors that the regulation lays out. *See* 28 C.F.R. § 36.303(c)(1). Thus, the thrust of Ms. Bowen's testimony, as indicated by her report, tracks the language of the applicable regulation, provides "testi[mony] as to whether the legal standard has been satisfied," and offers an opinion that "'merely tell[s] the jury what result to reach.'" *Burkhart*, 112 F.3d at 1213, 1212 (quoting Fed. R. Evid. 704 advisory committee's note). That testimony therefore usurps the factfinder's role. As a result, the Court will exclude Ms. Bowen's testimony. *Accord, e.g.*, *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 13–14 (D.D.C.

2010) (striking expert designation and report where "the bulk of [the proffered expert's] Declaration is nothing more than a legal analysis of the Privacy Act and a legal conclusion that the actions of the defendants amounted to a violation of that Act").

Given the similarity between the legal conclusion offered in *Burkhart* and Ms. Bowen's proffered opinion in this case, it is perplexing, and quite telling, that GWUH's opposition neither cites to nor grapples with *Burkhart*'s holding.  GWUH does offer three arguments to counter Plaintiffs' motion, however.  Each is unpersuasive.

First, GWUH invokes an exception, applied in some circuits,[5] that permits the introduction of legal conclusions that would "'help a jury understand unfamiliar terms and concepts'" in "cases that involve highly technical legal issues."  *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2001) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)).  This exception has generally been applied only in cases involving "a specialized industry" like securities regulation or the insurance industry.  Weinstein's Federal Evidence § 704.02[2][a], at 704–13 (2d ed. 2004); *see, e.g.*, *Offill*, 666 F.3d at 175 (securities regulation) *Peckham v. Cont'l Cas. Ins. Co.*, 895 F.2d 830, 837 (1st Cir. 1990) (insurance industry).  It may be that evaluating whether the use of VRI services provides effective communication in any particular *circumstance* is a complicated endeavor, given the context-specific inquiry 28 C.F.R. § 36.303 demands.  But the Court does not agree that the legal factors set out in that regulation are sufficiently complex or beyond the ken of the average factfinder to warrant expert testimony that is couched in legal conclusions.  If anything, the regulatory considerations—asking the factfinder to evaluate, for example, the "complexity of the communication involved," the "context in which

---

[5] The parties do not cite a case from the D.C. Circuit applying this exception, and the Court has found none.

the communication is taking place," or whether the communication is provided "in a timely manner"—are sufficiently understandable that a lay jury will be able to consider and apply them with proper instruction from the Court, and without an expert's assistance.[6]  *See* 28 C.F.R. § 36.303.  Moreover, applying the regulatory considerations invariably requires a case-by-case analysis that Ms. Bowen's expert report deliberately avoids altogether.  *See* Bowen Report at 6 ("Although the determination of whether effective communication is provided is made on a case-by-case basis, my focus here was on GWUH's policy.").

GWUH also overlooks a critical distinction drawn in the cases it cites.  While courts have at times permitted greater leeway and allowed expert testimony, couched in legal conclusions, when such testimony would assist the factfinder in navigating the complex legal regime at issue, those courts have been careful to caution that an expert may *not* testify about how the application of those legal standards should cut in the *particular case* before them.  *See Bilzerian*, 926 F.2d at 1294–95 (2d Cir. 1990) (noting that the challenged expert "did not give his opinion as to whether [the defendant's] actions violated the securities laws," but instead provided "general background on federal securities regulation and the filing requirements"); *Offill*, 666 F.3d at 174 (explaining

---

[6] Without providing any meaningful comparison to the substance of Ms. Bowen's proffered testimony, GWUH also cites to a case in the Southern District of New York in which a witness, Peter Blanck, who GWUH characterizes as "an expert on the ADA and related laws" was permitted to testify.  *See* Def.'s Mem. Opp'n at 10.  A review of Mr. Blanck's testimony, however, reveals that he offered mostly, if not exclusively, *factual* information about the needs of New York City's disabled residents during emergency evacuations, without opining directly on whether the city's evacuation policies violated the ADA by failing to take those needs into account.  *See* Pls.' Reply Ex. 1 (reproducing expert report).  Consistent with this understanding, the district court's findings of fact in that case cited Mr. Blanck's testimony only when describing the nature of those residents' needs.  *See Brooklyn Ctr. for Independence of the Disabled v. Bloomberg*, 980 F. Supp. 2d 588, 598, 600, 602, 604, 620, 623, 627–28 (S.D.N.Y. 2013); *cf. Burkhart*, 112 F.3d at 1213 ("It may well be permissible for an appropriate expert to testify as to the difficulty an individual like Burkhardt would have communicating with Officer Gray under the circumstances." (footnote omitted)).

that the experts provided testimony only "on the general operation of securities law" which although, "directly relevant to the conduct with which [the defendant] was charged," still "allow[ed] the jury to determine the law's applicability to [the defendant]"); *see also United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) (explaining that, although "[e]xpert witnesses are often uniquely qualified in guiding the trier of fact through a complicated morass of obscure terms and concepts," when "an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's"). Ms. Bowen's testimony in this case, by contrast, explicitly crosses that line. And GWUH does not identify any case in which a direct opinion "as to whether the legal standard has been satisfied" in the case at issue was admitted. *Burkhart*, 112 F.3d at 1212–13. An invitation to provide greater context for the factfinder is not an invitation to instruct the factfinder on what outcome to reach.

Second, GWUH urges that Plaintiffs' motion overlooks several areas of Ms. Bowen's testimony "which cannot be categorized as legal conclusions." Def.'s Mem. Opp'n at 5. To the contrary—several of these offered areas of testimony remain inadmissible legal conclusions, even if some are stated in more categorical terms. *See id.* at 5–6 (proposing to offer testimony of how "the ten features of GWHU's policies . . . make the overall policy consistent with the requirements of the ADA," how "the use of VRI by a hospital . . . would meet the regulations as implemented by the DOJ," how "VRI meets the requirement of 'effective communication' based upon [Ms. Bowen's] experience," and "[h]ow the 2010 changes to the ADA have been enforced with regard to public accommodations such as GWUH").

The other "areas" of testimony are confined to two pages of Ms. Bowen's report and, for the most part, only tangentially relate to the thrust of Mr. Bowen's assessment. Several grounds

do little more than recite the relevant administrative history.  *See id.* (listing "[t]he history of the applicable regulations from 1990 to 2010 when the amendments here were adopted," "[t]he regulatory process and background on how the applicable regulations were formulated and what they were meant to do . . . ," and "[a]n explanation of why the Department of Justice differentiated between public hospitals and private ones on how accommodations are to be provided"); *see also* Bowen Report at 5, 15–16.  But this information is readily available in the Federal Register.  Indeed, Ms. Bowen cites directly to the federal register herself.  Given the Court's conclusion that this regulatory scheme is not sufficiently "complex" to permit the introduction of expert testimony couched as legal conclusions, this testimony should not be offered to the factfinder.  Instead, the legal authorities can and should be cited, when appropriate, in the parties' briefing to this Court.  Finally, the last type of testimony, concerning the "history of communication technology for the deaf and hard of hearing[,] particularly the more recent influx of methods such as VRI," Def.'s Mem. Opp'n at 6, is contained in a single, generalized, and vague paragraph in the Background section of Ms. Bowen's report, *see* Bowen Report at 5.  GWUH does not contend that Ms. Bowen is a historical or technological expert that could provide the jury with specialized testimony about the history of assistive technology for the deaf.  Nor is there any dispute that the regulations now permit the use of VRI services as an auxiliary aid in appropriate circumstances.  Moreover, because the regulations require an assessment of VRI technology in a particular setting, it is not clear how this history would be relevant to the factfinder.  In short, because "the bulk" of Ms. Bowen's report is "nothing more than a legal analysis" of the ADA regulation and "a legal conclusion" that GWUH's policy does not amount to a violation of that regulation, it must be excluded.  *Convertino*, 772 F. Supp. 2d at 13–14.

Third, and for similar reasons, GWUH's contention that Plaintiffs' motion is premature is unavailing. Courts have not hesitated to strike an expert's designation and testimony prior to trial when it is clear that the expert's testimony will not assist the trier of fact.[7]  *See, e.g.*, *id.* at 13–14. Having found the thrust of Ms. Bowen's report—and that report's conclusion—to constitute an inadmissible legal conclusion, the Court will strike Ms. Bowen's testimony at this point. After trial, the Court would be prepared to consider whether Ms. Bowen's testimony would aid the Court in addressing Plaintiffs' request for injunctive relief, although, even in that context, the Court questions whether Ms. Bowen would be more helpful in the role of counsel, rather than as an expert witness. But for purposes of trial, the Court finds that Ms. Bowen's testimony is inadmissible.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion to strike Defendant's designation of Irene Bowen as an expert and to preclude her testimony is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  February 4, 2016                                      RUDOLPH CONTRERAS
                                                                          United States District Judge

---

[7] GWUH contends that "here, the judge will serve as both gatekeeper and finder of fact for some of the issues raised." Def.'s Mem Opp'n at 11. Yet, Plaintiffs' complaint demands a jury trial, and Defendants have not moved to strike that demand. Therefore, the Court proceeds on the understanding that a jury will consider GWUH's liability under the ADA, Section 504, and the D.C. Human Rights Act, with any appropriate equitable, injunctive relief to be decided by the Court post-trial. As a result, the cases GWUH cites for the proposition that it is generally more efficient for a court to hear the evidence, before excluding it, when it sits as both factfinder and evidentiary gatekeeper are not controlling here. *See, e.g.*, *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07 Civ. 5804 (GEL), 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 8, 2009) (explaining that where the Court serves both roles, "resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence"). And even if the Court was sitting as the factfinder, it would similarly find Ms. Bowen's testimony inadmissible at trial for purposes of determining GWUH's liability.